IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 99-30083 |
| ) | |
| MARCUS L. HARRIS, ) | |
| ) | |
| Defendant. ) | |

OPINION

RICHARD MILLS, United States District Judge:

Defendant Marcus L. Harris moves for compassionate release.

I.   BACKGROUND

Defendant Marcus L. Harris, a 50-year old male, seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A).

On December 16, 1999, following a jury trial, the Defendant was convicted of distribution of 54.8 grams cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The Defendant was held responsible for a large amount of crack cocaine and on October 23, 2000, was sentenced to 360 months imprisonment.

At the time, the sentencing guidelines were mandatory. After determining that Defendant had a prior qualifying felony drug conviction, the Court found the

Defendant's guideline range was 360 months because the statutory maximum penalty of a § 841(b)(1)(C) violation was 30 years. Without any qualifying prior drug convictions, the Defendant's statutory maximum penalty and resulting guideline range would have been 240 months imprisonment.

The Defendant has been in BOP custody for 258 months--almost 22 years—since he was arrested and detained on September 7, 1999. The Defendant is currently housed at FCI Oakdale I. According to the Bureau of Prisons website, his projected release date is October 5, 2022. He is less than 13 months away from halfway house placement.

The Defendant notes that based on his age, he has a much higher risk of serious illness or death from COVID-19 than do significantly younger individuals. He self-reports as being 5 feet 10 inches tall and weighing 215 pounds, which results in a Body Mass Index ("BMI") of 30.8, which classifies him as obese. The Centers for Disease Control has now recognized an "increased risk of severe illness from the virus that causes COVID-19 among adults with COVID-19 who have obesity." The Government acknowledges that obesity is a condition during the pandemic that qualifies as an extraordinary and compelling reason to consider compassionate release.

The Defendant further states that he suffers from hypertension that requires medication to control. As a 50-year old with obesity and hypertension, he faces an even greater risk of severe illness from COVID-19. The Defendant claims that the COVID-19 pandemic, along with other relevant factors, including his health conditions, the deaths from the virus at his facility, the changes in the law that would affect his sentence, the need to care for his aunt, and his positive prison disciplinary record create extraordinary and compelling circumstances to justify compassionate release.

The Government notes BOP records show that Defendant has not always taken his blood pressure medication as prescribed, in addition to failing to participate in health screenings. Therefore, although the Defendant has had frequent and more than adequate health care, he has not always followed basic medical directions.

The Government also notes that the COVID-19 situation at FCI Oakdale now appears to be under control. At FCI Oakdale, there is one inmate out of 834 total inmates and 26 staff members who are currently positive for COVID-19. www.bop.gov/coronavirus (last visited March 8, 2021). Seven individuals have died at FCI Oakdale. Oakdale also reports that 117 inmates and 79 staff have received both vaccine injections and are fully inoculated. *Id*.

The Government further asserts that Defendant's record prior to his incarceration and while in custody suggest that he is unlikely to follow CDC recommendations and is a danger to society if released.  The United States Probation Office's Compassionate Release Memorandum notes that Defendant in December 2019 was classified as a high-risk recidivism level, though the Memorandum lists only two disciplinary incidents, both of which were in 2019 and included failing to stand count and introduction of alcohol.  The Government also points to the Defendant's extensive criminal history which includes the following convictions: (1) possession of controlled substance convictions (multiple); (2) unlawful use of a weapon; (3) driving on suspended and revoked license (multiple); (4) resisting a peace officer (multiple); and (5) unlawful delivery of a controlled substance (multiple).  The Defendant's record of criminal activity spans his entire life except while incarcerated.  Because of this history, the Government contends he is a danger to the community and his motion should be denied for that reason.

## II. DISCUSSION

### (A)

Under the First Step Act, signed into law on December 21, 2018, defendants may now file motions for compassionate release after first exhausting administrative remedies within the BOP.  *See* 18 U.S.C. § 3582(c)(1)(A).  The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of

sentence based on "extraordinary" or "compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A).  If properly invoked by the Government, the exhaustion requirement must be enforced. *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). There is no dispute that Defendant has met the statutory exhaustion requirement.

The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

Because the Sentencing Guideline policy statement has not been updated since passage of the First Step Act to reflect that defendants (and not only the BOP) may move for compassionate release, there is no "applicable" policy statement concerning the expanded compassionate-release provision. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). "The statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)." *Id.* Until U.S.S.G. § 1B1.13 is amended,

5

there is not an "applicable" policy statement for courts to rely on in considering prisoner-initiated applications for compassionate release. *See id.* at 1181.

(B)

As the Court earlier noted, the Defendant's statutory maximum and guideline range was determined to be 30 years because of the presence of a qualifying prior conviction. The Presentence Investigation Report provides that the Defendant's prior drug convictions were all under the Illinois cocaine statute. The Seventh Circuit recently held that the Illinois cocaine statute is categorically overbroad and cannot be used as a "felony drug offense" to enhance a federal sentence under 21 U.S.C. § 851. *See United States v. Ruth*, 966 F.3d 642, 649-50 (7th Cir. 2020). Without that enhancement, the Defendant would have faced a 240-month statutory maximum instead of the 360-month statutory maximum, which was the term he received when he was sentenced in 2000. Accordingly, a similarly situated individual today would be sentenced to a term of 240 months or less.

Even without accounting for credit for good conduct, the Defendant has overserved by 18 months what would be his maximum sentence absent the § 851 enhancement that *Ruth* prohibits. Because of that factor along with the COVID-19 pandemic, the Defendant's age and obesity, the Court finds that extraordinary and compelling reasons exist in this case.

Under *Pepper v. United States*, 562 U.S. 476, 490-493 (2011), the Court should consider post-offense developments under § 3553(a). The Court recognizes that Defendant's extensive criminal history is concerning. However, all of those convictions occurred when the Defendant was in his 20s or younger. It is well known that the likelihood of recidivism diminishes with age. Notably, the Defendant does not have a history of violent offenses. The Defendant's disciplinary record while in prison is very good. Moreover, the Defendant states he has used his time in prison to rehabilitate himself by learning to weld and learning to forklift. The Court is doubtful that any additional rehabilitative effect will be achieved after nearly 22 years in prison.

The Court agrees with the Government that protection of the public along with deterrence are very important considerations. As with rehabilitation, however, it is questionable whether any additional deterrence would be achieved if the Defendant remained in prison. Moreover, the same concerns would be present whether the Defendant is released immediately or in October 2022. The Defendant's six-year supervised release term will provide a level of protection if the Defendant reoffends. The overriding factors are that Defendant has <u>overserved</u> what would be the maximum sentence under the law today, along with the Defendant's age and health issues during a pandemic.

Based on the totality of circumstances, the Court finds that extraordinary and compelling reasons exist and the applicable sentencing factors warrant granting compassionate release. Accordingly, the Court will reduce the Defendant's sentence to time served to be followed by a short term of home confinement. Such a sentence is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing.

Ergo, Defendant Marcus L. Harris's Amended Motion for Compassionate Release [d/e 121] is GRANTED.

The Clerk will terminate the Defendant's pro se motions [d/e 105 & 112] as moot.

The Clerk shall send a copy of this Order to the United States Probation Office.

The Court modifies Defendant's conditions of supervised release to require Defendant to spend three months in home confinement, with the first 14 days to be spent in isolation. The home confinement shall start as soon as possible after his term of supervised release begins. Defendant shall be monitored by telephonic monitoring as approved by the United States Probation Office until such time as the U.S. Probation Office is able to implement electronic monitoring. All other aspects of Defendant's sentence shall remain the same.

The Bureau of Prisons is ORDERED to immediately test Defendant for COVID-19. The Bureau of Prisons shall advise the U.S. Probation Office of the results of the test and, further, the Bureau of Prisons is also ORDERED to release Defendant once he has tested negative for COVID-19.

The Defendant must self-quarantine for a period of 14 days beginning at the time of his release.

The Clerk is DIRECTED to send a copy of this Order to FCI Oakdale I.

ENTER: March 11, 2021

    FOR THE COURT:

                        /s/ *Richard Mills*
                        Richard Mills
                        United States District Judge